UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ADRIENNE RUTLEDGE, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>AVEDA, et al., )<br>)<br>Defendants. )<br>) | Case Number: 2:14-cv-00145-JHE |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff-Relator Adrienne Rutledge initiated this action against Defendants Aveda Corporation ("Aveda"), Aveda Institute, Inc. ("Aveda Institute"), The Estee Lauder Companies, Inc. ("Estee Lauder"), and Neill Corporation, asserting False Claims Act ("the FCA") violations and state-law unjust enrichment. (Doc. 1). Defendant Beauty Basics, Inc. was substituted for the Neill Corporation by Consent Motion. (Docs. 26 & 27). Defendants subsequently moved to dismiss the complaint. (Doc. 28 & 30). On March 25, 2015, the undersigned entered a report and recommendation, recommending Defendants' motions to dismiss be granted and Rutledge granted leave to move to amend. (Doc. 44). On May 12, 2015, the report and recommendation was accepted and adopted by the Court. (Doc. 50). On May 22, 2015, Rutledge moved for leave to amend her complaint, attaching a copy of the proposed amended complaint. (Docs. 51 & 51-1). Defendants opposed the motion on the ground the proposed amendment would be futile. (Docs. 54 & 55). Rutledge did not reply within the time allowed by court order. (*See* doc. 53). The motion is now ripe for review. For the reasons stated more fully below, the motion for leave to amend is due to be **DENIED**.

## I. Standard of Review

"The futility threshold is akin to that for a motion to dismiss; thus, if the amended complaint could not survive Rule 12(b)(6) scrutiny, then the amendment is futile and leave to amend is properly denied." *B.D. Stephenson Trucking LLC v. Riverbrooke Capital Partners, LLC,* No. 06-0343-WS-M, 2006 WL 2772673, at *6 (S.D. Ala. Sept. 26, 2006) (citing *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1320 (11th Cir. 1999)); *see also Fla. Power & Light Co. v. Allis Chalmers Corp.*, 85 F.3d 1514, 1520 (11th Cir. 1996). Accordingly, Rutledge will only be permitted to amend her complaint if the proposed amended complaint cures the deficiencies under Rules 8(a), 9(b), and 12(b)(6), for which her original complaint was dismissed.

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955 (2007)). Mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" are insufficient. *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949 (citations and internal quotation marks omitted). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 557, 127 S. Ct. 1955).

However, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). Rule 9(b)'s particularity requirement applies to actions under the FCA. *U.S. ex rel. Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301, 1308-09 (11th Cir. 2002). "[A] plaintiff must plead facts as to time, place, and

substance of the defendant's alleged fraud, specifically the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them." *Id.* at 1310 (internal quotation marks omitted).

Federal Rule of Civil Procedure 12(b)(6) permits dismissal when a complaint fails to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949 (citations and internal quotation marks omitted). A complaint states a facially plausible claim for relief "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). The complaint must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965 ("Factual allegations must be enough to raise a right to relief above the speculative level."). Ultimately, this inquiry is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679, 129 S. Ct. at 1950.

The court accepts all factual allegations as true on a motion to dismiss under Rule 12(b)(6). *See, e.g., Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000). However, legal conclusions unsupported by factual allegations are not entitled to that assumption of truth. *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1950.

## II. Analysis

Rutledge's proposed amended complaint is a verbatim copy of the original complaint with additions (in bold to differentiate the new allegations) intended to cure the deficiencies of the original complaint. (Doc. 51 at ¶ 5; doc. 51-1). However, for the most part, the additions are

merely irrelevant or conclusory allegations that cannot save her claims.

First, the most extensive additions in the proposed amended complaint are about the distinctions between the Defendants themselves. Rutledge alleges that Aveda or the Aveda Institute operates the website Aveda.edu, which repeatedly uses "we" and does not distinguish between Aveda, Aveda Institute, and Estee Lauder and a separate entity Aveda Institute – Birmingham. (Doc. 51-1 at ¶¶ 98-120 & 126). Presumably, these allegations are intended to circumvent Rutledge having to allege her claims against any particular defendant. *See Ambrosia Coal & Constr. Co. v. Pages Morales*, 482 F.3d 1309, 1317 (11th Cir. 2007) ("'[I]n a case involving multiple defendants . . . the complaint should inform each defendant of the nature of his alleged participation in the fraud.'") (quoting *Brooks v. Blue Cross and Blue Shield of Florida, Inc.,* 116 F.3d 1364, 1381 (11th Cir. 1997). However, nothing in these allegations about the website states any bases to disregard the separateness of the various defendant entities, to find a conspiratorial agreement to violate the FCA, or to find specific instances of misrepresentations by specific defendants. Regardless, even if all of the defendants could be grouped together, Rutledge has failed to state claims against any of them, as detailed in the sections below.

Second, under a section titled "Fed. R. Civ. P. 9(b) Allegations," Rutledge alleges generally that "[p]ortions of the factual allegations necessary to prove the allegations are in the possession of the United States." (Doc. 51-1 at ¶ 27). However, Rutledge presents no authority to support the application of this exception to the Rule 9(b) requirements here. In fact, the *Clausen* court held this exception did not apply where the plaintiff "is not without avenues for obtaining information," specifically, the information sought was also in the hands of the government. 290 F.3d at 1314. Rutledge includes no allegations or argument regarding what

4

information the government has and why she is unable to acquire it. This conclusory allegation is insufficient to relax the Rule 9(b) requirement, and, even if it did, Rutledge does not allege which portions of the factual allegations are in the possession of the government so there would be no way to know to which gaps in the allegations this exception would apply.

The remaining allegations are specific to various elements of the claims asserted in her original complaint and will be addressed below, grouped together by the respective claims.

## A. Counts I and II – FCA Presentment and Make-or-Use Claims

As discussed in the undersigned's previous report and recommendation, because of the common false-certification theory Rutledge relies on for Counts I and II, the elements of the two claims overlap for the most part, except for the additional presentment element necessary to Count I. (Doc. 44 at 8-10). Rutledge must allege (1), with specificity, that Defendants violated its Program Participation Agreement ("PPA") with the Secretary of Education and certified that they had not; (2), with specificity, that those violations made Defendant ineligible for further payments from the government and, without the false certification, would not have been paid; and (3), generally, that Defendants had knowledge of the falsity of the claim or material statement. (*Id.*). For the presentment claim, Rutledge must also allege, with specificity, that a false claim was presented to the government. (*Id.* at 8). The original complaint was dismissed because it did not sufficiently allege any of these elements.

### 1. Violations of the PPA

#### a. Misrepresentations Regarding Nature of the Program

Six of Rutledge's new allegations expand on her allegations about the falsity of the nature of the program by providing an example of how "[r]etail sales rather than education occurs [sic] in the facilities." (Doc. 51-1 at ¶¶ 38-43). None of these new allegations present any specific

5

misrepresentations made about the nature of the educational program, but instead attempt to further support the proposition Defendants run a business instead of providing an education so that their presentation of themselves as educational institutions is a misrepresentation. (*See* doc. 51-1 at 2) ("The false certification being made to the government is that the students are receiving an education when they are the defendants' unpaid employees.").

Specifically, the allegations explain that teachers are paid bonuses based on student sales in retail and service and that "[p]aying bonuses based on student sales is not an educational practice" but instead "places the teachers in the sales manager role and financially incentivizes them to keep the students enrolled regardless of the students' educational performance." (*Id.* at ¶¶ 39-42). Rutledge also alleges grades were changed to keep students in school. (*Id.* at ¶¶ 43 & 124). Later, she alleges "[t]he Bledsoe reports" detail sales totals and other sales related indicators, which "are meticulously tracked where grades are not." (*Id.* at ¶¶ 58-59). Toward the end of the proposed amended complaint, Rutledge conclusorily states she has firsthand knowledge Defendants are running a retail chain instead of a school and that Defendants are aware the students get financial aid and their representations about education are false. (*Id.* at ¶¶ 122-23).

In the previous report and recommendation, the allegations of this element were found lacking because Rutledge provided no support for the proposition that alleging the instructors as sales managers and students as a federally funded retail workforce is sufficient to show Defendants' claim to be providing an education is a misrepresentation concerning the nature of their educational program. (Doc. 44 at 11-12). Moreover, Rutledge had also alleged the students received experience performing manicures and pedicures and working with hair and that completion of the program results in the necessary certification to the Alabama State Board of

6

Cosmetology and Barbering for the student to take the state licensing exam.  (*Id*. at 12).  The ultimate conclusion was that Rutledge pointed to no authority for her assertion "that allegations of a general nature regarding what amount of retail experience does or does not constitute an 'education' are sufficient to establish 'misrepresentation concerning the nature of an educational program.'"  (*Id.*).

Neither Rutledge's motion to amend nor her new allegations address this issue at all.  Her amended complaint continues to allege the students receive experience in various types of beauty care and that completion of the course results in certification to the state licensing board, (doc. 51-1 at ¶¶ 93-95 & 135-36), and she does not explain how any of the allegations regarding teacher compensation or grade inflation turn general representations about providing an education into misrepresentations.

### b. Incentive Compensation Ban

Rutledge also adds one further allegation to the allegations asserting violation of the incentive compensation ban under 34 C.F.R. § 668.14(b)(22)(i), which prohibits "any commission, bonus, or other incentive payment based in any part, directly or indirectly, upon success in securing enrollments or the award of financial aid, to any person or entity who is engaged in any student recruitment or admission activity."  After the original complaint's allegations that instructors are pressured to increase student enrollment, the proposed amended complaint adds that "[t]he more students instructors enroll increases their compensation because it forms of [sic] a basis for increased pay." (Doc. 51-1 at ¶ 55).

In the previous report and recommendation, the allegations of this violation were found lacking because Rutledge had not alleged "(1) what exactly the 10-12-10 plan requires, (2) that instructors are involved in the sort of recruitment the incentive compensation ban is intended to

7

address, or (3) that any instructor was actually paid an incentive for recruitment in violation of the ban." (Doc. 44 at 13). The new allegation is essentially a summarization of the original complaint's allegations about the 10-12-10 plan requiring instructors to increase student admissions and satisfaction of the 10-12-10 plan being the basis for bonus eligibility, but it does not provide any more specific allegations about the 10-12-10 plan itself, the recruitment activities, or the payment of bonuses. The new allegation does not cure the prior specificity issues.

### c. Misrepresentations Regarding Placement Rates

Rutledge also adds further allegations to support her contention Defendants misrepresent their placement rates in violation of § 668.14 and the PPA by "falsely hold[ing] out employment prospects to applicants to be employed within AVEDA's separate networks of salons," (doc. 1 at ¶ 36; doc. 51-1 at ¶ 45). Her amended complaint adds that "[s]tudents are misled about their chances of being employed in the AVEDA salons after completion of an AVEDA education," (*id.* at ¶ 46), and "AVEDA gives the impression that an AVEDA education taps one into the AVEDA salon network for employment," (*id.* at ¶ 121).[1] These are simply conclusory paraphrases of the previous conclusory allegations.

The previous report and recommendation noted that neither the conclusory "falsely hold[ing] out employment prospects" language nor the subsequent allegations about marketing materials saying AVEDA would "work with students to explore opportunities within the AVEDA network" alleges the use of job placement rates to attract students or that the statutorily required information is not subsequently made available to prospective students. The added

---

[1] It also adds the following sentence: "Inducing students to enroll the defendants are lied to about the prospects for postemployment and the student[.]" (Doc. 51-1 at ¶ 125). To the extent this generally alleges students are lied to about their prospects for employment after graduation, it is conclusory and does not meet the specificity requirements of Rule 9(b).

allegations do not cure this defect.[2]

### d. Other Alleged Violations

Rutledge's original complaint also alleged violations of 34 C.F.R. § 668.43 and 34 C.F.R. § 668.73 regarding costs and financial charges, (doc. 1 at ¶¶ 68-71, 74-75, & 78-83); violations of 34 C.F.R. § 668.42(c)(5) regarding work requirements for financial aid, (*id.* at ¶ 105); the use of unlicensed instructors, (*id.* at ¶¶ 57-60 & 63-64); and misrepresentations of class sizes, (*id.* at ¶¶ 61-62). The previous report and recommendation found these claims lacking because, respectively, the complaint did not state with particularity the alleged misrepresentations under § 668.73 or that the required information under § 668.43 was not "readily available," (doc. 44 at 14); the complaint alleged all students are required to work in retail as part of their education, regardless of their financial aid status, and did not allege Defendants failed to provide information to federally funded students about work required as part of their assistance, (*id.* at 11); the use of unlicensed instructors was already the subject of a suit against Beauty Basics and was barred by the first-to-file rule, (*id.* at 10 n.7); and the complaint mentioned class size "only once with no particularity as to when and where class size is misrepresented or who made the misrepresentation," (*id.*). There are no new allegations in the proposed amended complaint to cure the deficiencies previously found in these allegations. (*See* doc. 51-1).

---

[2] To the extent these allegations (along with the new allegation about there being "no assistance in securing AVEDA employment," (doc. 51-1 at ¶ 158)) are intended to show a violation of 34 C.F.R. § 668.72(k), prohibiting misrepresentations about "[t]he nature and availability of . . . supplementary assistance [the institution] will provide its students . . . after the completion of a course," the allegations are still insufficient to meet the requirements of Rule 9(b) because they are only general allegations paraphrasing what "[c]ompany marketing materials" state, instead of specific allegations of specific misrepresentations. Regardless, even if these allegations sufficiently alleged a violation of the regulations or PPA, Rutledge has still failed to allege the other elements of the claim.

### 2. Ineligibility/Materiality

Similarly, there are no new allegations in the proposed amended complaint addressing how and why noncompliance with the regulations allegedly violated would prevent payment by the government. Therefore, they remain insufficient. (*See* doc. 44 at 16-17) (citing *Jallali v. Nova Southeastern University, Inc.*, 486 F. App'x 765, 767 (11th Cir. 2012), and finding Rutledge had not alleged materiality of the violations in relation to payment of the claims).

### 3. Knowledge of Falsity

Rutledge's proposed amended complaint includes two additional allegations that appear to be targeted at curing the gaps in the original complaint's allegations regarding knowledge of falsity. First, it adds the allegation that, "[b]y signing a PPA, an educational institution acknowledges that [it] is subject to the terms and conditions in the PPA." (Doc. 51-1 at ¶ 34).[3] However, even if taken as true, it does not address at all Defendants' knowledge of materiality and ineligibility or of the falsity of any particular alleged misrepresentation.

Second, the proposed amended complaint includes the language referenced in footnote 1 above, which seems to refer to Defendants having lied about prospects for post-graduation employment, (*id.* at ¶ 125), and which may have been an attempt to bring the allegations more in line with *Munoz v. Computer Sys. Inst., Inc.*, No. 11-CV-7899, 2013 WL 5781810, at *6 (N.D. Ill. Oct. 25, 2013). However, as the previous report and recommendation noted, the *Munoz* court not only stated the relator had alleged "lies" (which implied knowledge) but that that allegation was backed up by substantial evidence showing knowledge (including allegations of false

---

[3] If, as Beauty Basics seems to assume, (*see* doc. 54 at 14), this allegation is directed at the materiality element, it is similarly deficient because alleging Defendants have acknowledged they are subject to the terms and conditions in the PPA does not also allege the government would consider them ineligible for payment if any regulation or provision of the PPA was violated.

numbers being provided to students along with allegations the defendant's management confirmed the numbers were inaccurate). (Doc. 44 at 18) (citing *Munoz*, No. 11-CV-7899, 2013 WL 5781810, at *5). Rutledge's original complaint was found deficient because it alleged only that Defendants are saying something that is not true and did not allege any particular defendant had knowledge of any particular statement's falsity. (*Id.*). Rutledge has not added any allegations to cure these defects.

### 4. Presentment Under 31 U.S.C. § 3729(a)(1)(A)

The second paragraph under the "Fed. R. Civ. P. 9(b) Allegations" section asserts Rutledge "knows that funding claims for the alleged education services under Title IV and other federal funding sources are submitted to the United States by Beauty Basics and/or the departments of AVEDA INSTITUTE." (Doc. 51-1 at ¶ 28). This is apparently an attempt to cure the lack of allegations on the "presentment" element of her first count, brought under 31 U.S.C. § 3729(a)(1)(A), which requires allegations a false claim "was presented, or caused to be presented, by the defendant to the United States for payment or approval." However, the previous deficiency was not that Rutledge had not alleged *generally* that she knew the claims were presented, but that the complaint lacked

> (1) direct allegations of *particular* instances of fraudulent submissions or (2) *specific* allegations including other indicia of reliability to support the conclusory allegations of fraudulent submissions (*e.g.*, firsthand but general knowledge of fraudulent submissions or defendant's records and billing practices, as in *Hill* [*v. Morehouse Med. Assocs., Inc.,* No. 02–14429, 2003 WL 22019936 (11th Cir. Aug. 15, 2003)]; or allegations of other circumstances sufficient to explain why she believes Defendants submitted false or fraudulent claims, as in *Walker* [*v. R & F Properties of Lake County, Inc.*, 433 F.3d 1349 (11th Cir. 2005)] and *Willis* [*v. Angels of Hope Hospice, Inc.*, 5:11-CV-041 MTT, 2014 WL 684657, at *6-8 (M.D. Ga. Feb. 21, 2014)]).

(Doc. 44 at 21) (emphasis added). The complaint never directly alleged any presentment of claims nor made any specific allegations of indicia of reliability to support her implied allegation

claims are being made to the government for educational grants and loans. (*Id.* at 21-22).

At most, the new allegation makes an express, conclusory allegation out of the implied, conclusory allegation that false claims were presented, but it neither provides direct, *specific* allegations of presentment of claims nor makes *specific* allegations of indicia of reliability. In fact, the allegation's hedge on who presented the claims ("Beauty Basics *and/or* the departments of AVEDA INSTITUTE") indicates instead that it amounts to the type of allegation, rejected by the Eleventh Circuit, that states "simply and without any stated reason for [the plaintiff's] belief that claims requesting illegal payments must have been submitted, were likely submitted or should have been submitted to the Government." *U.S. ex rel. Clausen v. Lab. Corp. of Am.*, 290 F.3d 1301, 1311 (11th Cir. 2002). All of the other new allegations address the alleged scheme itself and not how she allegedly knows presentment was made. Therefore, the proposed complaint continues to be deficient on the element of presentment necessary to Rutledge's FCA Presentment Claim in Count I.

## B. Counts III – FCA Conspiracy Claim

None of the new, bolded allegations allege facts to support the inference Defendants are working together under a purposeful agreement to knowingly commit acts prohibited by § 3729(a)(1). Therefore, it is still deficient. (*See* doc. 44 at 22-23) (finding the original complaint's failure to do so doomed Rutledge's FCA conspiracy claim).

## C. Count IV – State-Law Unjust Enrichment Claim

None of the new, bolded allegations are related to the state-law unjust enrichment claim. The complaint still does not allege any facts that could support a finding that Rutledge conferred a benefit on the Defendants it would be unjust for them to retain. Accordingly, her count for unjust enrichment, as stated in the proposed amended complaint, would be futile.

### III. Recommendation

Rutledge's proposed amended complaint does not allege facts to support all of the elements of any of her claims; therefore, leave to amend her complaint would be futile. Accordingly, the undersigned **RECOMMENDS** Rutledge's motion for leave to amend, (doc. 51), be **DENIED**.

### IV. Notice of Right to Object

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b)(2), Fed. R. Civ. P., any party may file specific written objections to this report and recommendation within fourteen (14) days from the date it is filed in the office of the Clerk. Failure to file written objections to the proposed findings and recommendations contained in this report and recommendation within fourteen (14) days from the date it is filed shall bar an aggrieved party from attacking the factual findings on appeal, except for plain error. Written objections shall specifically identify the portions of the proposed findings and recommendation to which objection is made and the specific basis for objection. A copy of the objections must be served upon all other parties to the action.

DONE this 11th day of December 2015.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE